No. 93,394

In the Matter of JIMMIE A. VANDERBILT, *Respondent*.

110 P.3d 419

Opinion filed April 22, 2005.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of John J. Ambrosio Chtd., of Topeka, argued the cause for the respondent, and *Jimmie A. Vanderbilt*, respondent, appeared pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against Jimmie A. Vanderbilt, of Oskaloosa, an attorney admitted to the practice of law in Kansas.

The formal complaint against respondent alleges violations of KRPC 1.1 (2004 Kan. Ct. R. Annot. 342) (competence); 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence); 1.16(d) (2004 Kan. Ct. R. Annot. 426) (terminating representation); 3.2 (2004 Kan. Ct. R. Annot. 440) (expediting litigation); and 8.4(d) and (g) (2004 Kan. Ct. R. Annot. 485) (misconduct). Respondent filed a formal answer admitting the allegations set out in the formal complaint.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on September 21, 2004, in Topeka, Kansas. Respondent appeared in person and through counsel, John J. Ambrosio. The panel found by clear and convincing evidence:

"2.   In 1996 and in 2000, the Respondent was elected to serve Jefferson County as the County Attorney. The Respondent presently continues in that capacity. His term will end in January, 2005.

"*State v. Mavrovich*, No. 79,527.

"3.   Andrew Mavrovich appealed the District Court's approval of a *Nunc Pro Tunc* Order regarding his sentence to the Kansas Court of Appeals. Mr. Mavrovich questioned whether the amended journal entry should have included credit for time spent in competency testing before trial.

"4. As County Attorney, it was the Respondent's responsibility to file a brief in behalf of the State of Kansas in Mr. Mavrovich's appeal. The Respondent failed to file a brief with the Kansas Court of Appeals.

"5. During the disciplinary investigation, the Respondent told the disciplinary investigator that he did not file a brief in the *Mavrovich* case because he 'wasn't going to waste [his] damn time responding to this crap.'

"6. The Kansas Court of Appeals affirmed Mr. Mavrovich's sentence.

*"State v. Robinson,* No. 84,806

"7. A jury convicted Randy L. Robinson of manufacturing methamphetamine, possession of drug paraphernalia, and possession of anhydrous ammonia. Mr. Robinson appealed the three convictions and the sentence for manufacturing methamphetamine.

"8. Again, it was the Respondent's responsibility, as County Attorney, to file an appellate brief in behalf of the State of Kansas in Mr. Robinson's case. The Respondent failed to file a brief in the Robinson case with the Kansas Court of Appeals.

"9. During the disciplinary investigation, the Respondent told the disciplinary investigator that he did not file a brief because he did not believe that doing so was important.

"10. In its opinion, the Kansas Court of Appeals stated:

'We note with much concern that the State did not file a written brief. This omission hindered our efforts to arrive at a just decision. At best, the State's failure to file a brief suggests a lack of confidence that the lower court's decision should be upheld; at worst, a lack of necessary zeal in representing and protecting the interests of the public.'

The Kansas Court of Appeals reversed Mr. Robinson's conviction for manufacturing methamphetamine and remanded the case for a new trial.

*"State v. James,* 31 Kan. App. 2d 548, 67 P.3d 857 (2003)

"11. Timothy J. James, contrary to his pleas, was convicted of the felonies of aiding and abetting aggravated burglary, aiding and abetting aggravated robbery, and aiding and abetting aggravated kidnapping. Thereafter, the Honorable Gary L. Nafziger, Jefferson County District Court Judge, sentenced Mr. James to 253 months in prison.

"12. Mr. James filed a timely motion for a new trial. The District Court denied the motion for a new trial. Thereafter, Mr. James filed a timely notice of appeal to the Kansas Court of Appeals. In the appeal, Mr. James alleged that the District Court erred in denying the motion for new trial because (1) the evidence was insufficient, (2) his trial counsel was ineffective, and (3) there was newly discovered evidence.

"13. Again, it was the Respondent's responsibility to file an appellate brief in behalf of the State of Kansas in Mr. James' case. The Respondent failed to file a brief with the Kansas Court of Appeals.

"14.   On May 2, 2003, the Kansas Court of Appeals issued its opinion. In its decision, the Court stated:

> 'The State's failure to file a brief and to contest appellant's allegations concerning his attorney leaves us with little choice but to believe that appellant's attorney acted as appellant indicates in his brief. This is one consequence of the State's failure to file a brief with this court or to deny the contents of appellant's brief.'

*State v. James*, 31 Kan. App. 3d 548, 552-53 (2003). The Kansas Court of Appeals therefore agreed with Mr. James, and concluded that he did not have the benefit of effective assistance of counsel, and reversed Mr. James' conviction and remanded the case for a new trial. *Id.* at 554.

"15.   On remand, the Respondent hired a special prosecutor to handle the prosecution. At the conclusion of the second trial, Mr. James was convicted of only one of the three crimes originally charged, compared to conviction of three crimes in the first trial. At the second sentencing, Mr. James was sentenced to only 76 months, compared with the 253 months sentenced after the first trial.

"16.   At the hearing on this matter, the Respondent acknowledged the serious ramifications that occurred as a direct result of his failure to file a brief in the *James* case. The Respondent testified that (1) the victims and witnesses had to undergo the stress and strain of testifying a second time, (2) the county had to incur the expense of a second trial, and (3) Mr. James is a dangerous person who will be released back into society after 76 months rather than after 253 months. In addition, the conduct of Mr. James' original trial counsel was deemed 'ineffective,' thereby besmirching his good name, without a defense of that good name in the appellate court.

### "Cellular Telephone

"17.   In his capacity as the Jefferson County Attorney, the Respondent obtained a cellular telephone. The Respondent's budget for this item was $150.00 per month.

"18.   At some point, the Respondent engaged in a conversation with the cellular telephone company. After the conversation, the Respondent believed that the agreement for the cellular telephone included unlimited calling. The Respondent took no action to obtain written confirmation of the new agreement. Thereafter, the Respondent began using the county-paid telephone for personal calls.

"19.   The Respondent's agreement with the cellular telephone company did not include unlimited minutes. The Respondent's personal use of his business cellular telephone resulted in added charges. As a result, the Respondent owes Jefferson County $791.00 for the expenses associated with his personal use of the business cellular telephone.

"20.   The Respondent has not reimbursed Jefferson County the $791.00 for the personal use of cellular telephone, despite his acknowledgment that he owes it.

### "Debit Card

"21. While in Salina for personal reasons, the Respondent used a debit card issued to him for professional use by Jefferson County. The amount of the expense was $80.00.

"22. The Respondent has not reimbursed Jefferson County the $80.00, despite his acknowledgment that he owes it.

"23. While in South Carolina attending a continuing legal education conference, the Respondent used the debit card issued to him from Jefferson County. The expenses incurred by the Respondent while attending the conference exceeded the amount included in the Jefferson County personnel handbook. At the hearing on this matter, the Respondent agreed to pay back any expenses that exceeded those set forth in the Jefferson County personnel handbook. The Respondent has not reimbursed Jefferson County for excess expenses incurred in South Carolina.

"24. At the hearing on this matter, the Respondent acknowledged that he owes Jefferson County for the expenses related to the cellular telephone and the debit card. The Respondent agreed that he will reimburse Jefferson County before he leaves office in January, 2005.

### "Mental Health

"25. William L. Albott, Ph.D., testified in the Respondent's behalf at the hearing on this matter. Dr. Albott is a licensed psychologist. Dr. Albott testified that in July, 2003, he evaluated the Respondent. Dr. Albott's evaluation included psychological tests as well as a personal interview. A report of the evaluation can be found at Disciplinary Administrator's Exhibit 5.

"26. Based upon the psychological testing and the personal interview, Dr. Albott concluded as follows:

'There are no indications of any enduring or significant mental illness or psychological problems. That he experienced a great deal of stress and was cognitively and psychologically dysfunctioning at the time of his reported unprofessional conduct seems clearly evident and had he been seen at that time, the most likely diagnosis which would have been given is **Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, Acute**. At this time, the diagnosis can be seen as continuing to characterize both his behavior and his psychological functioning.

. . . .

'It is strongly recommended that Mr. Vanderbilt become involved in an individual psychotherapy process which is directed at developing a broader range of interpersonal problem solving skills and means of adapting to stress. . . .

'To the question as to whether I see Mr. Vanderbilt able to function as an Attorney and conform to the rules of professional conduct, I see nothing in my interview or the psychological tests that would indicate he is incapable of such functioning. It is my opinion that Mr. Vanderbilt can function ef-

fectively and appropriately as an attorney and the therapy process noted above will diminish the possibility of any future unprofessional conduct. It would not be unreasonable for his practice at [*sic*] an Attorney to be monitored, particularly at this time, to insure that his personal life problems are not becoming again totally consuming of his cognitive and emotional energy.' "

## The panel made the following conclusions of law:

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 3.2, KRPC 8.4(d), and KRPC 8.4(g), as detailed below.

"2.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Jefferson County when he failed to file briefs in the *Mavrovich* case, the *Robinson* case, and the *James* case. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Jefferson County when he failed to file briefs in the *Mavrovich* case, the *Robinson* case, and the *James* case. Because the Respondent failed to act with reasonable diligence and promptness in representing Jefferson County, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4.   An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite the *Mavrovich* case, the *Robinson* case, and the *James* case before the Kansas Court of Appeals. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"5.   KRPC 8.4 provides, in pertinent part, as follows:

'It is professional misconduct for a lawyer to:

. . . .

'(d)   engage in conduct that is prejudicial to the administration of justice;

. . . .

'(g)   engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

The Respondent violated KRPC 8.4(d) and KRPC 8.4(g), as detailed below:

'a.   The Respondent engaged in conduct that was "prejudicial to the administration of justice," when he failed to file briefs in the *Mavrovich* case, the *Robinson* case, and the *James* case. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

'b.   Using the cellular telephone issued to him in his professional capacity, for personal purposes and failing to timely reimburse Jefferson County adversely reflects on the Respondent's fitness to practice law. Additionally, using

the debit card issued to him in his professional capacity, for personal purposes and failing to timely reimburse Jefferson County adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).' "

The panel applied the American Bar Association Standards for Imposing Lawyer Sanctions (1991) and considered ABA Standard 3 in making its recommendation as to the discipline to be imposed against the respondent. The panel stated:

"*Duty Violated*. The Respondent violated his duty to his client to provide diligent and competent representation. Additionally, the Respondent violated his duty to the legal system to expedite litigation and to refrain from interfering with the administration of justice. Finally, the Respondent violated his duty to the legal profession to maintain personal integrity.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual harm. Specifically, regarding the *James* case, Mr. James' trial counsel was accused of failing to provide effective assistance of counsel. Because the Respondent failed to controvert Mr. James' claim, the Kansas Court of Appeals concluded that Mr. James' trial counsel was ineffective and reversed Mr. James' convictions of three serious felony crimes. The victims and witnesses had to testify a second time, Jefferson County incurred the expense of a second trial, and Mr. James was convicted of only one of the three crimes and received 76 months in prison, rather than the 253 month sentence he originally received.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Pattern of Misconduct. In addition to the multiple failures to file appellate briefs, there are multiple instances of the Respondent not repaying Jefferson County and this failure continues still despite his acknowledgment that the debt is owed.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 3.2, KRPC 8.4(d), and KRPC 8.4(g). As such, the Respondent committed multiple offenses.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to Jefferson County for his personal use of the cellular telephone and debit card.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42."

The panel then concluded its recommendation as follows:

"Based upon the findings of fact, conclusions of law, and the Standard listed above, a majority of the Hearing Panel recommends that the Respondent be suspended from the practice of law in the state of Kansas for a period of six months. The Hearing Panel is mindful of the Disciplinary Administrator's recommendation for published censure, to which the Respondent did not voice an objection. However, a majority of the Hearing Panel believes that — based on the Standards listed above — the several violations found herein, based on evidence of misconduct which was not controverted, over a three-year period of time, justifies more serious results than a censure. The Hearing Panel further recommends that in order for the Respondent to be reinstated at the end of the six-month period, that the Respondent comply with the following terms and conditions:

"1.    The Respondent immediately contact a psychologist and start psychotherapy as strongly recommended by Dr. Albott.

"2.    The Respondent meet with the psychologist at least one time per month, continuing throughout the period of suspension.

"3.    The Respondent sign an authorization and release of information, enabling the Disciplinary Administrator's office to discuss his treatment with his psychologist.

"4.    The Respondent attend, pay for, and successfully complete a Practical Skills continuing legal education program, as defined by Kan. Sup. Ct. R. 802A [2004 Kan. Ct. R. Annot. 613].

"5.    The Respondent make full restitution to Jefferson County and provide proof to the Disciplinary Administrator's office that full restitution has been made.

"6.    The Respondent shall locate a member of the bar of the state of Kansas who is willing to supervise the Respondent's practice upon reinstatement for at least one year. The practice supervisor must be approved by the Disciplinary Administrator's office.

"7.    The Respondent shall obtain professional liability insurance to be effective upon reinstatement.

"If the Respondent complies with the terms and conditions listed above, the Disciplinary Administrator's office shall certify to the Kansas Supreme Court that the Respondent has met the conditions precedent to reinstatement and the Respondent should be reinstated subject to the following terms and conditions of probation.

"In the event the Respondent fails to comply with the terms and conditions set forth above, the Disciplinary Administrator's office shall file a written request that the Respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219 [2004 Kan. Ct. R. Annot. 312], prior to reinstatement.

"The Hearing Panel recommends that after the Respondent is reinstated into the practice of law that the Respondent comply with the following terms and conditions of probation, pursuant to Kan. Sup. Ct. R. 211(g) [2004 Kan. Ct. R. Annot. 275], for a period of one year:

"1. *Psychological Treatment.* The Respondent will continue his treatment with his psychologist and follow all treatment recommendations throughout the period of supervised probation unless, in his psychologist's opinion, continued treatment is no longer necessary. The Respondent and his psychologist shall notify the Disciplinary Administrator in the event that the Respondent discontinues treatment against the recommendation of the psychologist during the probationary period. The Respondent shall provide the Disciplinary Administrator's office with quarterly reports from his psychologist regarding the treatment recommendations and the Respondent's compliance with the treatment recommendations.

"2. *Supervision.* The Respondent shall allow the practice supervisor access to his client files, calendar, and trust account records. The Respondent shall comply with any requests made by the practice supervisor. During the period of probation, the Respondent shall meet with the practice supervisor at least bi-weekly. The practice supervisor shall prepare a monthly report to the Disciplinary Administrator regarding the Respondent's status on probation.

"3. *Audits.* Within thirty (30) days of the date of the Respondent's reinstatement, the practice supervisor shall conduct an initial audit of the Respondent's files. Three months after the completion of the first audit, the practice supervisor shall conduct a second audit. At the completion of the one-year supervised probation, the practice supervisor shall conduct a third audit. After each audit, the practice supervisor shall make a report regarding the audit. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor shall include such information in his report. The practice supervisor shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report. The Respondent shall follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports.

"4. *Office Procedures.* Within ten days of his reinstatement, the Respondent shall file with the Disciplinary Administrator written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The Respondent shall modify that procedure if

directed to do so by the Disciplinary Administrator. The Respondent shall follow the written office procedure.

"5. *Continued Cooperation.* The Respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the Respondent shall timely provide such information.

"6. *Additional Violations.* The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action as required by Kan. Sup. Ct. R. 211(g)."

Panel member E. Roger Horsey filed a concurring and dissenting opinion. He concurred in the findings of fact and conclusions of law, but recommended respondent be sanctioned by published censure.

Respondent has admitted the violations and has taken no exceptions to the panel's final report.

We conclude that the findings and conclusions of the hearing panel are supported by clear and convincing evidence, and we adopt the findings and conclusions of the hearing panel. However, we do not believe the recommended discipline of supervised probation is realistic or workable in the circumstances in which the respondent presently finds himself.

We conclude that a 1-year suspension from the practice of law is an appropriate discipline in this case.

IT IS THEREFORE ORDERED that Jimmie A. Vanderbilt be suspended from the practice of law in the state of Kansas for a period of 1 year, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2004 Kan. Ct. R. Annot. 237).

IT IS FURTHER ORDERED that respondent attend, pay for, and successfully complete a practical skills continuing legal education program, as defined by Kansas Supreme Court Rule 802A (2004 Kan. Ct. R. Annot. 613); make full restitution to Jefferson County; and obtain professional liability insurance to be effective upon his reinstatement to the practice of law.

IT IS FURTHER ORDERED that respondent fully comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301), and at the end of the 1-year suspension, the respondent will be reinstated upon furnishing proof of compliance with Rule 218 and the above conditions.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and the costs of these proceedings be assessed to the respondent.

GERNON, J., not participating.

LARSON, S.J., assigned.